the mere face of the papers. Upon precedent and principle alike we think this was erroneous. The judgment of the same court in Re Whipple [Case No. 17,513], is in no wise in conflict with our decision. It did, it is true, upon a mere question of how much. refuse to record a resolution of compromise. It was, however, upon full hearing. All the facts were before the court. Whether the American courts ought to assume this duty of supervision to an extent much larger than that exercised in England is not before us for decision. We prefer the rule as there announced, but shall cheerfully acquiesce for the sake of conformity in what shall be the general judgment of co-ordinate tribunals.

There are some other features in the case which might with propriety be discussed, but we prefer resting our judgment solely upon the error that there was no hearing and evidence outside of the resolution and statement. Bissell v. Jones, L. R. 4 Q. B. 49, is cited by the petitioners in review in support of that feature of the present composition which transfers in certain contingencies the property to Stroh. No objection has been made to it by counsel in this court. We see none ourselves, but have not much considered it. And see Wells v. Hacon, 5 Best & S. 196, and Ex parte Nicholson, 5 Ch. App. 332.

The fact that a large majority of the creditors assented to the resolution has been earnestly urged by the petitioners in review. We do not deem it material whether great or small. It is only a circumstance which might with others be taken into consideration in a doubtful case, where fraud or gross inadequacy appeared. The fact that many creditors appeared by attorney, referred to in the opinion of the learned district judge, we do not deem of consequence here. It, too, is but another fact in the mass of evidence which would be necessary to invalidate the resolution. It is explained that the attorneys who signed for the creditors were attorneys in fact, especially authorized in most instances to sign for a precise sum named in the compromise. In such circumstances, where the attorney has but a ministerial duty to perform, there is no incompatibility in the same person appearing as attorney for the debtor upon the record and also as the attorney in fact, authorized to compromise as a special ministerial duty—that of signing the deed of compromise for the sum named in the power of attorney itself.

These matters are referred to here only as illustrative of what we deem at least the better and safer principle, that of rejudging the judgment of the creditors only upon the fullest hearing and consideration of all the testimony. They may all be more or less important when that testimony is fully before the court.

---

## Case No. 17,331a.

### Case of WEBER RANCH.

[See Case No. 17,328.]

---

## Case No. 17,332.

### In re WEBSTER et al.

[9 Int. Rev. Rec. 137.]

Circuit Court, S. D. New York. 1869.

CUSTOMS FRAUDS—COMPROMISE OF CRIMINAL PROSECUTION—AUTHORITY OF SECRETARY OF TREASURY—RIGHTS OF INFORMERS—JUDGMENT IN FRIENDLY SUIT—CONCLUSIVENESS.

1. Frauds upon the customs revenue were discovered, and criminal proceedings instituted against the offenders, and action commenced to recover the duties estimated to be due. Upon negotiation, the secretary of the treasury, acting under section 10 of the act of March 3, 1863 [12 Stat. 740], authorized a compromise,—that all said civil and criminal proceedings should be discontinued, and the offenders should pay to the United States $59,-722 in gold, on account of said duties, and $32,-000 in currency, on account of penalties incurred, and thereupon be relieved from all liabilities. All said proceedings were accordingly stopped, and the sums mentioned paid into the registry of the court. but only after confession of judgment in a friendly action of debt for the several amounts as penalties, instituted by the district attorney. The United States claimed the entire gold fund as duties. The customs officers claimed one-fourth as their legal share of the fund as penalties, and two sets of informers claimed shares of the fund as penalties, against the United States, and as between each other. Held, that the compromise was without legal or binding effect, and invalid, in not having been made in accordance with the said section, and the secretary of the treasury had no power, under any law, to compromise criminal proceedings in such a case. Notwithstanding the invalidity of the compromise, the entire gold fund adjudged upon the admission of the offenders in the negotiations which led to it, and upon other uncontradicted evidence, to belong wholly to the government as duties.

2. The record in the said friendly action of debt was not conclusive evidence of the rights of the parties and the character of the fund.

3. As between two sets of informers. where the first information of the frauds. which led to the eventual recovery of the penalties, was given by one set, and the other rendered valuable service in collecting evidence and testimony. and expended money therefor, without which it was doubtful whether any considerable sum would have been realised. held, that the first set, that gave the information which induced the prosecution, was entitled to the informer's share.

At law.

Simon Towle, for the United States.

C. A. Seward, for Webster, Moulton & Beecher.

C. Fine, for Burtnett & Heffelin.

A. W. Tenney, for Wiggins.

BENEDICT, District Judge. This is a controversy between the customs officers and certain informers on the one hand, and the United States on the other; and also between the informers, among themselves in regard to the distribution of a certain fund which originally consisted of $59,722 in gold and $32,000 in currency, and which was paid into the registry of this court. under the following circumstances: In the summer of 1867 the officers of the customs having discovered that great frauds upon the government had been